Dryden vs. Britton.

---

## DRYDEN VS. BRITTON.

It is always proper for the court to withdraw a question from the consideration of the jury, where, in case of a verdict adverse to the view entertained by the court, it would be proper to set the verdict aside as against the weight of evidence.

Where the defendant, claiming to be the owner of a note made by the plaintiff to a third person, set up a counter-claim for the balance due upon said note, his own evidence showed that previous to the commencement of the action an agreement was entered into between him and the holder of said note, that the latter should ascertain the amount of a payment made upon it but never indorsed, and should indorse the same, and then transfer the note to the defendant, who was to execute his own note for an amount due from him on account to said holder, together with the amount due on said note after deducting the payment so to be indorsed; that the indorsement was made on the same day that the summons in this action was served; and that the note, so indorsed, was not delivered to the defendant until several days afterwards: *Held*, that the court did not err in instructing the jury that there was no evidence from which they could find that defendant was owner of said note when the action was commenced, and withdrawing that question from their consideration.

The title of the note did not pass to defendant until delivery, or at least until the amount to be indorsed was ascertained and the indorsement made.

APPEAL from the Circuit Court for *St. Croix* County. Action, commenced November 21, 1862, for the price of a

horse sold by plaintiff to defendant. The answer set up several counter-claims, one of which was for a balance of $24.56 upon a note for $36, dated September 16, 1862, executed by *Dryden* to one Benjamin Tucker, and of which the defendant claimed to be the owner and holder. The note, which was put in evidence, had indorsed upon it, under date November 21, 1862, payment of $11.56. One Marsh H. Tucker, a brother of said Benjamin, as a witness for the defendant, testified that as agent for his brother, under a power of attorney, he had sold the note to the defendant two or three weeks before the indorsement was made. " We had settled ; *Britton* owed me $100. He knew of this note [from *Dryden* to Benjamin Tucker], and offered to give me his note for the amount of it and the balance he owed me. * * He afterwards gave me his note for the balance of account against him and the balance due on this note." On cross-examination he said : " We [witness and defendant] had not really liquidated the amount, but had talked over about it. I told him what was due, and that there was an indorsement to be made upon it. I think he asked me how much it was. ' I told him how much the indorsement was to be. He said he would give me his note for what he owed me, and this note besides. No time was mentioned when this was to be carried out. After this I saw *Britton* several times before I handed him over the note. * * * It was *five or six days after the indorsement*, that *Britton* called for the note. I then gave it to him for the first time. - * * The indorsement was made at *Dryden's* house. It was talked over between me and *Dryden*. The payment on the note *had been made but not indorsed*, when I had the first talk with *Britton*. We were not at the time where we could get paper. My talk with *Britton* was two or three weeks after the $11 was paid, and before the indorsement was made." On re-examination for defendant witness said, that at the time of his first talk with *Britton* he told the latter that there was $11 and some cents paid, and that he had to see *Dryden* about the amount of

the indorsement, indorse it, and then he (*Britton*) could have the note; thought he told the amount to be indorsed within a few cents.

The circuit judge, in instructing the jury, held that no evidence had been introduced showing a transfer or sale of said note to the defendant before the commencement of this action; and he withdrew all the evidence bearing upon that subject from their consideration. Verdict for the plaintiff. Motion for a new trial denied; and judgment upon the verdict; from which the defendant appealed.

*Allen Dawson*, for appellant. [No brief on file.]

*Clough & Baker*, for respondent, to the point that title to the *Dryden* note had not passed to the defendant at the commencement of this action, cited Blackburn on the Contract of Sale, 120–121, 151-2, 154; 1 Parsons on Con., 441; 2 id., 484; 15 Johns., 349; 6 Cow., 250; 2 N. Y. Leg. Obs., 425; 4 Seld., 291; *Ganson v. Madigan*, 15 Wis., 151; *Des Arts v. Leggett*, 16 N. Y., 582. To the point that the court properly took the question from the jury, they cited *Latham v. Westervelt*, 26 Barb., 261; 1 Hilton, 336; 7 Wend., 160; 6 Duer, 75; Hill and Den. Supp., 171; 4 Seld., 67; 10 N. Y., 236; 28 Barb., 99; 2 Duer, 59; 1 Wend., 376; 12 Barb., 84; 1 Wend., 511; 1 Denio, 583; 15 N. Y., 524; 25 id., 541; 10 Barb., 321; 21 id., 489. Counsel further contended that even if it were admitted that title to the note passed at the time of the indorsement, and that the action was not commenced until the summons was *served*, the plaintiff must show affirmatively that the indorsement was made *before* the service of the summons.

*By the Court*, DIXON, C. J. We think the court below was right in withdrawing the Tucker note from the consideration of the jury. Such a direction is always proper when, if submitted to the jury, a contrary verdict would be set aside as against the weight of evidence. The title of the note did not pass to *Britton* until delivery, or at least until the amount to be indorsed was

ascertained and the indorsement made, which appear not to have been done until after the commencement of this action. It was one of the conditions of the agreement between *Britton* and Tucker that a certain amount already paid was to be ascertained and indorsed; but no time was fixed within which Tucker was to do so. This was necessary, to know how much *Britton* was to pay, for which it seems he was to give his own note to Tucker. Until these things were done, it seems clear to us that the title of the note still in the hands of Tucker remained unchanged, and that there was no error in the instruction.

Judgment affirmed.